UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILSON ZUNIGA GUILLEN,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondents.

Case No. C26-2845-SKV

ORDER GRANTING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Wilson Zuniga Guillen is a citizen of Honduras who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1, ¶ 14. Through counsel, he filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which he challenges the constitutionality of his redetention on May 19, 2021. Dkt. 1. He seeks immediate release from custody and related relief. Dkt. 1 at 17.

The Petition is supported by Petitioner's declaration. Dkt. 1-2. Respondents filed a return, Dkt. 5, together with declarations from Christopher Hubbard, Dkt. 6, and Kristin R. Vogel, Dkt. 7. Petitioner filed a traverse in reply. Dkt. 8.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 1, for the reasons set forth below.

## I. BACKGROUND

Petitioner first entered the United States on October 20, 2016, near Calexico, California. Hubbard Decl., ¶ 3.[1] He was later ordered removed after waiving his right to pursue relief during a Master Calendar Hearing in an immigration court, and he departed the United States on January 5, 2017. *Id.* ¶ 6.

Petitioner returned to the United States in 2021. Petitioner asserts that he, his pregnant partner, and their two daughters left Honduras in February 2021 after he was threatened by drug cartels for not participating in narcotics trafficking. Zuniga Guilllen Decl., ¶ 1.[2] He and his family entered the United States on February 22, 2021, near Hidalgo, Texas. *Id.* ¶ 2. They were processed at a U.S. Border Patrol ("USPB") intake center, where Petitioner was fitted with an ankle monitor and instructed to present himself to ICE officials in Houston, Texas. *Id.* Respondents assert that Petitioner was released on an Order of Release on Recognizance ("OREC") on February 23, 2021, due to a lack of bed space at the detention facility and enrolled in an Alternative to Detention program, in which he was required to participate through August 12, 2022. Dkt. 5 at 5; Hubbard Decl., ¶ 7.

Petitioner asserts that he and his family moved to the Denver, Colorado area, with the permission of the Houston, Texas ICE office in April 2021. Zuniga Guillen Decl., ¶¶ 3-4. Petitioner and his family lived in the Denver area from April 2021 until his redetention on May 19, 2026. *Id.* ¶¶ 7-8. Petitioner has no criminal history. *Id.* ¶ 6; Dkt. 7-3 at 4.

[1] Declaration of Christopher Hubbard ("Hubbard Decl."). Dkt. 6

[2] Declaration of Wilson Geovany Zuniga Guillen ("Zuniga Guillen Decl."). Dkt. 1-2.

Petitioner states that about ten weeks after his arrival in Denver, during which he attended virtual check-in appointments without fail, Denver ICE officers removed the ankle monitor and scheduled Petitioner and his family for a Master Calendar Hearing in 2024. *Id.* ¶ 4. Although the family appeared for the 2024 hearing, it was rescheduled to December 2025, and then rescheduled again to September 2026.[3] *Id.* ¶ 5.

Petitioner attests that he had been planning to appear for the September 2026 hearing when he was detained by USBP agents without warning on May 19, 2026, while driving home from work. *Id.* ¶ 8; Hubbard Decl., ¶ 8. Respondents assert that when he was taken into U.S. Department of Homeland Security ("DHS") custody,

> Record checks confirmed that the Petitioner had a pending immigration court date regarding his illegal entry into the United States. The Petitioner was working without proper authorization, which demonstrated his lack of candor and high risk of flight should he be released on his own recognizance pending his future immigration court date. DHS determined that continued detention is warranted to ensure compliance and the orderly administration of removal proceedings.

Hubbard Decl., ¶ 8; *see also* Dkt. 7-3 (Form I-213). Respondents do not provide any particulars as to the process by which DHS arrived at this determination. It is undisputed that DHS did not provide advance notice or a pre-deprivation hearing prior to detaining Petitioner. *See* Dkt. 1, ¶ 6. Instead, "Petitioner was advised in Spanish that he would be held in DHS custody pending transfer to ICE ERO for further proceedings. Petitioner was given an informal interview, acknowledged understanding of the revocation, and had no further statement to give." Hubbard Decl., ¶ 8; *see also* Dkt. 7-3.

[3] Respondents attest that "Petitioner had a Master hearing scheduled for September 9, 2026, with the Denver Immigration Court, in Denver, Colorado" when he was redetained. Dkt. 5 at 6 (citing Hubbard Decl., ¶ 8). Petitioner attests that the hearing was scheduled for September 17, 2026. Dkt. 1-2, ¶ 5.

After being taken into custody, Petitioner filed an application for immigration relief on July 17, 2026, and a motion for bond determination on August 3, 2026, with the Tacoma Immigration Court in Tacoma, Washington. Hubbard Decl., ¶¶ 9–10. That court set an individual hearing on August 10, 2026, which Petitioner moved to continue on August 6, 2026. *Id.* ¶¶ 10-11. On August 10, 2026, the Tacoma Immigration Court denied the continuance, denied conditional release, ordered Petitioner removed to Honduras, and ordered him detained without bond. *Id.* ¶¶ 11-13. Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") on August 18, 2026, which remains pending. Hubbard Decl., ¶ 12.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner brings one claim: that Respondents violated his Fifth Amendment right to due process when they re-detained him without first providing pre-deprivation notice or an opportunity to be heard. Dkt. 1 at 16. He seeks immediate release "under conditions no more restrictive than those in place at the time he was re-detained." *Id*. at 17. He requests that Respondents be immediately and permanently enjoined from "re-detaining or placing any electronic GPS monitoring device on Petitioner during the pendency of his removal proceedings absent written notice and a hearing before a neutral decisionmaker where Respondents must

prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no alternative conditions would mitigate those risks." *Id.* at 4. He also requests return of his personal property, including identification documents (other than a passport), and an award of attorney's fees and costs under the Equal Access to Justice Act. *Id.* at 17.

Respondents do not dispute that Petitioner was redetained without notice or a pre-deprivation hearing. They contend, however, that "[b]ecause Petitioner was apprehended near the border shortly after his second unlawful entry into the United States in 2021, he may lawfully be detained under 8 U.S.C. § 1225(b)(2)(A)." Dkt. 5 at 2. Respondents suggest that Petitioner was detained under Section 1225(b) and released in 2021 for urgent humanitarian reasons (lack of bed space) pursuant to 8 U.S.C. § 1182(d)(5)(A), contrasting humanitarian release with discretionary release under 8 U.S.C. §1226(a). Respondents acknowledge that the Court may determine that Petitioner is currently detained under the discretionary authority of 8 U.S.C. § 1226(a)—rather than §1225(b)—because he was released on an OREC in 2021. *Id.* at 3; *see also id.* at 3-4 (also stating, with no further discussion, that revocation of Petitioner's release is nonetheless authorized by 8 C.F.R. § 236.1(c)(9)).

**A. 8 U.S.C. § 1226 governs Petitioner's detention.**

Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), but recognize courts in this District consistently find noncitizens previously released under circumstances similar to Petitioner's to be detained under § 1226(a). *See* Dkt. 5 at 3-4 (and the Western District case cited therein). Despite acknowledging District authority rejecting their position, Respondents maintain that Petitioner remains subject to detention under 8 U.S.C. § 1225(b) as an applicant for admission "[b]ecause Petitioner was apprehended near the border shortly after his second unlawful entry into the United States in 2021[.]" *Id.* at 2.

Respondents argue that a recent decision by the Ninth Circuit Court of Appeals supports Respondents' position that Petitioner may be lawfully detained under 8 U.S.C. § 1225(b)(2)(A). Dkt. 5 at 2). In essence, Respondents' interpretation of the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026), is that § 1225(b) applies to Petitioner because he was initially encountered and detained at the border in 2021, rather than initially encountered and detained within the interior of the United States like the petitioners in *Rodriguez Vazquez*. *See id.*

This argument has been rejected by Courts in this District and nothing in Respondents' briefing compels a different result. *See Francisco Rodas v. Scott*, No. C26-2840-MLP, 2026 WL 2620255, at *3-5 (W.D. Wash. Sept. 4, 2026); *Briones Montenegro v. Warden/Facility Adm'r, Northwest Processing Ctr.*, No. C26-2743-LK, 2026 WL 2607491, at *3-4 (W.D. Wash. Sept. 3, 2026); *Ortiz-Canales v. Blanche*, C26-2748-DGE, 2026 WL 2561542, at *2 n.4 (W.D. Wash. Aug. 31, 2026). *See also Torres v. Barr*, 976 F.3d 918, 926 (9th Cir. 2020) (rejecting the government's theory that the time of an application for admission "continues, potentially for years or decades"); *Rodriguez Vazquez*, 183 F.4th at 1178 (rejecting the government's theory that a noncitizen "present in the interior of the United States remains in the perpetual state of seeking admission").

It is clear Petitioner was not "entering" the United States at the time he was redetained. Rather, ICE encountered Petitioner in Kalispell, Montana after he had spent the last several years living inside the United States and subject to pending removal proceedings. *See* Hubbard Decl., ¶¶ 7-8. Petitioner was "already in the country" and therefore subject to detention under § 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Accordingly, the Court sees no basis to find that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). Having determined that Petitioner's detention is governed by 8 U.S.C. § 1226 here, we consider the process due to him.

**B. *Mathews* and Due Process**

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (omissions added). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

*1. Petitioner had a liberty interest in remaining free.*

When ICE released Petitioner in 2021, he acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). After being

released into the United States, he settled in the Denver area, where he lived with his partner and children. Zuniga Guillen Decl., ¶¶ 4-10. He maintained employment, supported his family, and established a community at his local church. *Id.* Those actions were only made possible because of his freedom, the revocation of which was entitled to due process. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). The value of Petitioner's liberty interest is highlighted by Petitioner's description of the difficulties his family has encountered since he was detained, including having to relocate to live with family in a different state because of the loss of Petitioner's support. Zuniga Guillen Decl., ¶ 10. Petitioner's liberty interest in remaining free was unquestionably deprived by his arrest and re-detention challenged here. Accordingly, the first factor weighs in Petitioner's favor.

2. *There was a high risk of erroneous deprivation.*

As for the second *Mathews* factor, the Court finds there was a high risk of erroneous deprivation when Petitioner, having been released to live the United States, was re-detained without notice or an opportunity to be heard and without the Government first considering whether he posed a risk of absconding or a danger to the community. Respondents do not address the *Mathews* factors. They, at most, assert that "Petitioner was working without proper authorization, which DHS determined demonstrated his lack of candor and high risk of flight should he be released on his own recognizance pending his future immigration court date," and "that continued detention is warranted to ensure compliance and the orderly administration of removal proceedings." Dkt. 5 at 7 (citing Hubbard Decl., ¶ 8 and Form I-213).

The *Mathews* analysis looks to the risk of an erroneous deprivation of the relevant interest through the governmental procedures used, and the probable value, if any, of additional or substitute safeguards. *Mathews*, 424 U.S. at 335. When the Government released Petitioner on an OREC in 2021, the issuing officer must have first necessarily found that his release "would not [have] pose[d] a danger to property or persons, and that [he was] likely to appear for any future proceeding." *See* 8 C.F.R. § 236.1(c)(8). Respondents indirectly acknowledge this to be so. *See* Dkt. 5 at 3. The unilateral decision to then revoke that release without meaningful and individualized consideration of flight risk or danger comes with a high risk of erroneous deprivation. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases).

Respondents suggest a single justification for Petitioner's redetention: DHS deemed him to be a flight risk because he had been employed without proper authorization. Dkt. 5 at 5. Other courts have recently observed that "unauthorized employment is inextricably related to the unlawful status" of a petitioner and that to treat unauthorized employment as a proxy for flight risk "would essentially convert discretionary detention under Section 1226(a) to a de facto mandatory Section 1225 detention." *Gonzalez Reyes v. Rios*, EDCV 26-3830 JGB (DFM), 2026 WL 2190830, at *5 (C.D. Cal. July 28, 2026) (citing *Mendez Trisueros v. Guadian, et al.*, 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026); *Villa v. Mullin*, 834 F. Supp. 3d 957, 962 (C.D. Cal. 2026)). In any case, Respondents do nothing to satisfy the Court that the DHS's reassessment of Petitioner's flight risk in 2026 was accompanied by sufficient procedural safeguards to mitigate the risk of erroneous deprivation.

It appears here that Petitioner was redetained based solely on the conclusion that his unauthorized employment activities indicate a lack of candor that could correlate with flight risk, a conclusion untethered from any individualized consideration of other factors that might bear on

the likelihood of his appearance at future court dates. The circumstances of Petitioner's redetention show there was a high risk of erroneous deprivation and that additional, pre-deprivation process would have been valuable in ensuring such error did not occur. Providing notice and a pre-deprivation hearing would have provided an opportunity for Petitioner to challenge the factual bases for his redetention. This factor weighs in favor of Petitioner.

*3. The Government's interest did not justify forgoing pre-deprivation process.*

Finally, the Government's interest in redetaining Petitioner without notice or an opportunity to be heard was low. Again, Respondents do not here address the *Mathews* factors. They, at most, suggest a relevant governmental interest in stating that "DHS determined that continued detention is warranted to ensure compliance and the orderly administration of removal proceedings." Hubbard Decl., ¶ 8. The Government certainly has an interest in immigration enforcement, which includes, for example, ensuring noncitizens appear at future proceedings, protecting the public from dangerous noncitizens, prompt execution of removal orders, and preventing noncitizens from "remaining in the United States in violation of our law." *Demore v. Kim*, 538 U.S. 510, 518 (2003); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, Respondents do not articulate an interest advanced by Petitioner's redetention that would have been undermined by first providing pre-deprivation process. As discussed above, there is minimal evidence that Petitioner posed a flight risk or a danger to the community that would have arguably justified his redetention without notice. Nor do Respondents argue the law compelled it. *See, e.g.*, 8 U.S.C. § 1226(c)(1).

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v.*

*Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

**C. Injunctive Relief**

As noted above, Petitioner also seeks permanent injunctive relief barring his redetention or placing any GPS monitoring device during the pendency of his removal proceedings absent written notice and a hearing before a neutral decisionmaker. Dkt. 1 at 17. In response, Respondents request that any injunctive relief granted to Petitioner in the form of notice before re-detention, "should exclude any future detention arising out of an administratively final order of removal under 8 U.S.C. § 1231 (a) or detention arising out of any future status as a criminal alien under 8 U.S.C. § 1226(c)." Dkt. 5 at 7.

Petitioner has demonstrated his May 19, 2026, redetention was unlawful under the Fifth Amendment. However, Petitioner seeks to show a risk of unlawful redetention by pointing to the Government's conduct in "re-detaining similarly situated noncitizens without a pre-deprivation hearing[.]" Dkt. 1 at 4 (citing *Ortiz v. Hermosillo*, C26-0384-TL, 2026 WL 607672, at *5 (W.D. Wash. Mar. 4, 2026)). In other words, he relies on the aggregated circumstances of noncitizens like him to show an individualized risk of future harm.

The Court recognizes the logic behind Petitioner's argument. And as many courts in this District have found, the Government has now been on notice for well over a year that ICE's practice of redetaining those previously released without a material change in circumstances or first providing notice and an opportunity to be heard is unconstitutional. *See* Dkt. 1 at 12 (and the Western District cases cited therein). Nevertheless, Petitioner's factual development for his

request as it relates to his individual risk of being unlawfully redetained is relatively undeveloped and conclusory. *See id*. at 11-12. On the limited record, the Court does not find Petitioner has shown he faces a "cognizable danger of recurrent violation[.]" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). His request is therefore denied without prejudice. Nothing prevents Petitioner from seeking habeas relief in the future, should it become necessary.

Finally, the Court declines to grant Petitioner's request for the return of his property upon his release given the absence of any accompanying factual support or argument that would provide a basis upon which the Court could conclude Respondents would seek to impermissibly retain Petitioner's property.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the amended habeas petition (Dkt. 1) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of his redetention. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's remaining requests for injunctive relief are DENIED. Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 14th day of September, 2026.

S. Kate Vaughan

S. KATE VAUGHAN
United States Magistrate Judge